## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**THOMAS E. POPE and CHRISTINE POPE**                                     **PLAINTIFFS**

**VS.**                                                           **CIVIL ACTION  NO: 3:08-CV-464-TSL-JCS**

**FREEDOM MORTGAGE CORPORATION, INC.,
STAGGS MANAGEMENT GROUP, LLC,
ALLSOUTH APPRAISAL, INC., KENNY GREGG,
CHARLES F. PAYNE, INDYMAC FEDERAL BANK, F.S.B.,
SPECIALIZED LOANSERVICING, LLC,
CITIMORTGAGE, INC., AND STEVEN D. USRY,
AND JOHN DOES 2-5**                                                     **DEFENDANTS**

### PLAINTIFFS' FIRST AMENDED COMPLAINT
### (Jury Trial Demanded)

Plaintiffs, Thomas E. Pope and Christine Pope (hereinafter "Popes"), individual residents of

the State of California, by and through counsel, file this their First Amended Complaint for damages

against Defendants, Freedom Mortgage Corporation, Inc., a New Jersey corporation (hereinafter

"Freedom Mortgage"), Staggs Management Group, LLC, a Utah limited liability company

(hereinafter "Staggs Management"), AllSouth Appraisal, Inc., a Mississippi corporation (hereinafter

"AllSouth"), Kenny Gregg, an individual adult resident citizen of the State of California (hereinafter

"Kenny Gregg"), Charles F. Payne, an individual adult resident citizen of the State of Mississippi

(hereinafter "Charles Payne"), IndyMac Federal Bank, F.S.B., a federal savings bank under

Receivership by the Federal Deposit Insurance Corporation (hereinafter "IndyMac"), Specialized

Loan Servicing, LLC, a Delaware limited liability company (hereinafter "Specialized Loan"),

Citimortgage, Inc., a New York corporation (hereinafter "Citimortgage"), and Steven D. Usry, an

individual adult resident citizen of the State of Mississippi (hereinafter "Steve Usry"), and in support thereof would show as follows:

## PARTIES

1.      Plaintiffs, Thomas E. Pope and Christine Pope are individual residents of the State of California who own real property in the First Judicial District of Hinds County, Mississippi located at 3151 and 3155 Booker Street, Jackson, MS 39209.

2.      Defendant Freedom Mortgage, upon information and belief, is a New Jersey corporation authorized to do and doing business in Mississippi and can be served with process in this matter by serving its registered agent for service of process, CT Corporation System, at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232, or as otherwise provided by law.

3.      Defendant Staggs Management, upon information and belief is a Utah limited liability company and can be served with process in this matter by serving its registered agent for service of process, John E. Wootton, Esq., at 11576 South State Street, Suite #101-B, Draper, UT 84020, or at 147 West Election Road, Suite #200, Draper, UT 84020, or at 13684 S. Vestry, Draper, UT  84020, or as otherwise provided by law.

4.      Defendant AllSouth is a Mississippi corporation doing business in Mississippi and can be served with process in this matter by serving its registered agent for service of process, Charles F. Payne, at 1018 Arlington Street, Jackson, MS  39202, or at 1510 North State Street, Suite 300, Jackson, MS 39202, or as otherwise provided by law.

5.     Defendant Kenny Gregg, upon information and belief is an adult resident citizen of the State of California, and is or was an agent and/or employee of Defendant Freedom Mortgage d/b/a Freedom Home Mortgage Corporation in California, and is or was an agent and/or employee of Staggs Management, and who may be found and/or served with process at 8313 Almadine Drive, Sacramento, CA 95829, or at 9870 Research Drive, Irvine, CA 92618, or wherever he may be found, or as otherwise provided by law.

6.     Defendant Charles Payne is an adult resident citizen of the State of Mississippi, and is an officer, director, and/or owner of Defendant AllSouth.  He may be found and/or served with process at 1510 North State Street, Suite 300, Jackson, MS 39202, or at 1018 Arlington Street, Jackson, MS 39202, or wherever he may be found, or as otherwise provided by law.

7.     Defendant IndyMac Federal Bank, F.S.B., is a federal savings bank with its principal place of business at 888 East Walnut Street, Pasadena, CA 91101.  IndyMac Federal Bank, F.S.B., is the successor to IndyMac Bank, F.S.B., and may be served with process upon its registered agent, The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808, or as otherwise provided by law.

8.     Defendant Specialized Loan Servicing, LLC is a Delaware limited liability company doing business in the State of Mississippi, and may be served with process upon its registered agent, Capital Corporate Services, Inc., 840 Trustmark Building, 248 East Capital Street, Jackson, MS 39201, or as otherwise provided by law.

9.     Defendant Citimortgage, Inc., is a New York corporation doing business in the State of Mississippi, and may be served with process upon its registered agent, C. T. Corporation

System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39201, or as otherwise provided by law.

10.     Defendant Steven D. Usry is an individual adult resident citizen of the State of Mississippi.  He may be found and/or served with process at 104 Southpointe Drive, Suite 104, Jackson, MS 39272, or wherever he may be found, or as otherwise provided by law.

11.     Defendant John Does 2-5 are unknown parties interested in the subject matter of the action and will be added by amendment and notice when discovered and/or known pursuant to F.R.C.P. 9 (h) and/or (i).

## JURISDICTION & VENUE

12.     The Defendants committed a tort in whole or part in the Southern District of Mississippi and/or were or are doing business in the Southern District of Mississippi, and/or have engaged in activities related to the sale, purchase and/or security interest of real property located in the Southern District of Mississippi, and/or entered into a series of contracts to be performed in whole or part in the Southern District of Mississippi, and further, because the cause of action which is the subject of this lawsuit occurred and/or accrued in whole or part in the Southern District of Mississippi, venue is proper in the Southern District of Mississippi pursuant to 28 U.S.C. § 1391(b).

13.     The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

14.     This Court has jurisdiction herein pursuant to the Status of Receivership of IndyMac by virtue of 12 U.S.C. § 1821 (c)(3)(A) and/or 12 U.S.C. § 2601 et seq. ("RESPA").

4

## ALLEGATIONS AS TO ALL COUNTS

15.     Thomas E. Pope and Christine Pope allege that Defendants entered into a "Fraud

for Profit Mortgage Scheme" whereby several parties acted negligently and/or conspired to

fraudulently induce them to purchase two (2) Fourplexes located at 3151 and 3155 Booker Street,

Jackson, Mississippi 39209 (hereinafter "Properties"), located in Jackson, Mississippi through

the use of a sophisticated network of real estate brokers, lenders, and appraisers.

16.     On or around February 1, 2006, Tom and Christine Pope enrolled in a Real Estate

Investing Program administered by Prosper Learning.  Prosper Learning is an educational

institution based in Utah that offers classes/mentoring to teach students how to invest in real

estate.  During the program, Prosper Learning referred the Popes to Kenny Gregg of Staggs

Management and shortly thereafter was contacted by Kenny Gregg.  It was represented and

agreed that Kenny Gregg would be the Pope's sole agent and representative with respect to the

purchase of any properties.  On or around August 8, 2006, Defendant Kenny Gregg and/or Staggs

Management entered into a contract with the Popes and presented them with an investment

opportunity to purchase the Properties.  Kenny Gregg and/or Staggs Management stated that they

would give the Popes the first right of refusal since they were new to Staggs Management and

Kenny Gregg wanted them to be successful on their first purchase.  After presenting the Popes

with the investment opportunity, Kenny Gregg and/or Staggs Management told the Popes that

Kenny Gregg would be the single point of contact for this as well as all future transactions and

this would eliminate any middle man and extra expenses.  Kenny Gregg also stated he would be

in charge of making all of the financing arrangements and coordinating the closing.

17.     Kenny Gregg is or was an employee of Freedom Mortgage Corporation.

5

18.     Kenny Gregg is or was also an employee of Staggs Management Group, a/k/a as Staggs Financial Group, Inc., Staggs Consulting, and Staggs Property Management Group.

19.     Kenny Gregg held himself out only as an employee of Staggs Management and failed to disclose any relationship between himself and Defendant Freedom Mortgage.

20.     Kenny Gregg prepared the contracts for the sale of the Properties, prepared and completed the Uniform Residential Loan Application, ordered the appraisals, property inspections, arranged for financing and coordinated the closing for the Popes.

21.     Essentially, the Defendants conspired to negligently and/or fraudulently over-appraise and thus wrongfully inflate the value of the Properties by procuring and utilizing the negligent and/or fraudulent appraisals.

22.     In addition to using inflated appraisals, the Defendants made numerous intentional and material misrepresentations, false statements, and concealed material facts for the sole purpose of inducing the Popes into purchasing the Properties.

23.     Further, Defendants received significant undisclosed compensation and failed to make the required fee disclosures to the Popes.

24.     These undisclosed fee and compensation arrangements created serious conflicts of interest that prevented the Popes from learning the true nature of the transaction.

## COUNT I
## VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT
### (Against Staggs Management, Freedom Mortgage, Kenny Gregg and Steve Usry)

25.     Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

6

26.     Defendants Freedom Mortgage, Staggs Management, and Kenny Gregg brokered the mortgages that are the subject of this action and which are "federally related mortgage loans" within the meaning of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2602(a).

27.     Defendants Freedom Mortgage, Staggs Management, Kenny Gregg and Steve Usry violated the rights of the Popes under RESPA, 12 U.S.C. § 2601 et seq., by:

(a)     By preparing, completing, adopting, approving, distributing, and or signing HUD-1 Settlement Statements that contained false or fraudulent information, in violation of 12 U.S.C. § 2603(b); and,

(b)     By conspiring to and paying fees, kickbacks or other things of value to each other pursuant to an agreement or understanding that business incident to or part of the real estate settlement services would be referred to each other as prohibited by 12 U.S.C. § 2607 and 24 C.F.R. § 3500.14.

28.     As a result thereby, Plaintiffs were damaged, in an amount to be determined at the trial of this cause.

**COUNT II**
**VIOLATION OF THE MISSISSIPPI MORTGAGE CONSUMER PROTECTION LAW**
**(Against Staggs Management, Freedom Mortgage and Kenny Gregg)**

29.     Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

30.     Defendants Freedom Mortgage, Staggs Management and Kenny Gregg violated Miss. Code Ann. § 81-18-27 (1972, as amended) in one or more of the following ways:

7

(a)     These Defendants violated Miss. Code Ann. § 81-18-27 (1)(a) and (b)

when they intentionally failed to disclose that Kenny Gregg was an

employee of both Defendants Freedom Mortgage and Staggs Management.

In fact, Kenny Gregg represented at all times relevant to the transaction

that he was only an employee of Staggs Management and his role would

be to help the Popes locate an investment property and present them with

financing options.  Kenny Gregg also failed to disclose that he was an

owner and/or officer of Superior Marketing Concepts, Inc. Kenny Gregg

negligently and/or intentionally misrepresented to the Popes via numerous

e-mails and telephone conversations that the Properties were located in a

stable area of Jackson and property values were expected to increase

between 5-10% when he knew or should have known said Properties were

in fact located in areas with extremely high crime rates and drug problems.

Further, Kenny Gregg negligently and/or fraudulently represented that the

tenants in the Properties before closing were current with all rental

obligations and there was a real likelihood to raise rents in the near future.

Kenny Gregg did this with the intention of defrauding the Popes and

knowing his actions would be relied upon by the Popes to their detriment.

(b)     These Defendants violated Miss. Code Ann. § 81-18-27(1)(b) when they

knowingly used the above misstatements, misrepresentations, and

omissions with the intent to defraud the Popes and to facilitate their

acceptance of the terms of the contract to purchase the Properties.

8

(c)     These Defendants violated Miss. Code Ann. § 81-18-27(k) when they

received undisclosed compensation in the amount of $23,000.00 labeled as

consulting fees when the Pope's loan closed.  Kenny Gregg additionally

received undisclosed compensation in the amount of $990.00 from his

corporation Superior Marketing Concepts, Inc., when the Pope's loan

closed.

31.     As a result of their acts and/or omissions, the Popes suffered damages, the exact

amount to be shown at the trial of this cause.

**COUNT III**
**VIOLATION OF REAL ESTATE BROKERS LICENSE LAW OF 1954**
**(Against Staggs Management and Kenny Gregg)**

32.     Plaintiffs re-assert and re-allege each and every allegation contained in the

preceding paragraphs.

33.     Defendants Staggs Management and Kenny Gregg are not licensed real estate

brokers as defined in Miss. Code Ann. § 73-35-1, and, as such, acted in violation of this statute to

the detriment of the Popes.

34.     Staggs Management and/or Kenny Gregg, directly or indirectly, received a

Twenty-three Thousand and No/Dollars ($23,000.00) commission for the Pope's closing despite

not being licensed real estate brokers in the State of Mississippi as required by Miss Code Ann.

§ 73-35-3.

35.     Staggs Management and Kenny Gregg violated Miss. Code Ann. § 73-35-21(e) by

acting for more than one (1) party in a transaction and/or receiving compensation from more than

one (1) party without the knowledge of the Popes.

9

36.     The Popes suffered damages as a result of the violations of Miss. Code Ann. § §

73-35-1, 73-35-3 and 73-35-21(e) by Staggs Management and/or Kenny Gregg, the exact amount

to be shown at the trial of this cause.

**COUNT IV**
**BREACH OF CONTRACT**
**(Against Staggs Management and Kenny Gregg)**

37.     Plaintiffs re-assert and re-allege each and every allegation contained in the

preceding paragraphs.

38.     Kenny Gregg and/or Staggs Management breached their contract with the

Plaintiffs in one or more of the following ways:

(a)     Kenny Gregg/and or Staggs Management prepared and submitted two (2)

real estate contracts for the Popes to sign, and later, in an act of fraud and

deception, substituted the signatory page of the first real estate contract

signed by the Popes on August 15, 2006, with another contract that had a

different Seller and Closing Attorney than the one they initially signed.  A

copy of said contracts are attached hereto as Exhibit "A" and made a part

hereof by reference.

(b)     Kenny Gregg and/or Staggs Management communicated via e-mail and

over the telephone that they represented only the Pope's interests in the

purchase of the Properties despite the fact they had no intention of

protecting the Pope's interests, all in violation of Miss. Code Ann. § 73-

35-21(e).

10

(c)     Kenny Gregg and/or Staggs Management as part of their contract with the Popes said they would make every effort to secure financing for the Pope's Properties on the most favorable terms possible, when in fact they never attempted to secure financing from any other lender other than the Defendant Freedom Mortgage.

(d)     By engaging in self-dealing and by failing to disclose the material benefits and compensation each would receive for brokering the loan.

39.     As a direct and proximate result of such breach of contract by Kenny Gregg and Staggs Management, Plaintiffs have suffered actual damages and losses, the exact amount to be shown at trial.

**COUNT V**
**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**
**(Against Staggs Management and Kenny Gregg)**

40.     Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

41.     The law implies a covenant of good faith and fair dealing into every contract. This implied covenant imposes upon each party to a contract the duty to do nothing destructive of the other party's right to enjoy the fruits of the contract and to do everything that the contract presupposes they will do to accomplish its purposes.

42.     Kenny Gregg and Staggs Management breached the implied covenant by failing to disclose that Kenny Gregg was both an employee of Staggs Management as well as Freedom Mortgage and that Kenny Gregg would receive significant compensation as a result of originating

11

the Pope's loans through Freedom Mortgage, all in violation of Miss. Code Ann. § 73-35-21(e).

These Defendants also altered the property contract the Pope's executed.

43.    As a result of these Defendants' actions in this regard, the Plaintiffs have been

damaged, the exact amount to be shown at trial.

**COUNT VI**
**BREACH OF FIDUCIARY DUTY**
**(Against Freedom Mortgage, Staggs Management, and Kenny Gregg)**

44.    Plaintiffs re-assert and re-allege each and every allegation contained in the

preceding paragraphs.

45.    Kenny Gregg acting in his capacity as a mortgage loan broker, originating loans

for or on the behalf of Defendant Freedom Mortgage and Staggs Management owed the Popes a

fiduciary duty of the highest good faith by making a full disclosure of all material facts

concerning the loan transactions.

46.    Further, in providing/originating loans to the Popes, Freedom Mortgage, Kenny

Gregg and Staggs Management had the following fiduciary duties and/or obligations:

   (a)  to ascertain and follow the Pope's wishes regarding the making of the loan
for the Properties;

   (b)  to obtain or procure mortgages for the Popes on the best terms available;

   (c)  to provide the Popes with a written document describing the services and
agreements between them;

   (d)  to inform the Popes of the cost of its services;

   (e)  to explain to the Popes the costs of its services;

   (f)  to disclose options, costs, and risks of loans available to the Popes; and

12

(g)     to make only truthful representations based on actual knowledge regarding the services of the lender it obtained for the Popes.

47.     The HUD-1 Settlement Statement attached hereto as Exhibit "B" and made a part hereof reflects that Twenty-three Thousand and No/Dollars ($23,000.00) was paid to Staggs Management in the form of "Consulting Fees".  Nine Hundred Ninety and No/Dollars ($990.00) was paid to Superior Marketing Concepts, Inc.  Twenty-seven Thousand and No/Dollars ($27,000.00) was paid to Blaise Property Investments, LLC.

48.     Freedom Mortgage, Staggs Management, and/or Kenny Gregg individually and/or collectively, breached their duties to the Popes by acting in their own interests in the following manner:

(a)     by charging fees which were neither bona fide nor reasonable;

(b)     by failing to make any of the above required disclosures as well as disclose alternative, less costly loan options;

(c)     by failing to comply with the disclosure requirements of the State of Mississippi and federal law;

(d)     by failing to disclose or explain the $23,000.00 "Consulting Fee" paid to Staggs Management at closing.  Kenny Gregg at no time indicated he would be paid a "Consulting Fee" for his services, nor did he disclose he was also an employee of Freedom Mortgage and would receive compensation from them as well;

13

(e)  by failing to disclose or explain the $990.00 fee paid to Superior Marketing Concepts, Inc., prior to closing, or that Kenny Gregg owned or controlled said Corporation; and

(f)  by failing to disclose or explain the $27,000.00 payment to Blaise Property Investments, LLC, prior to closing.  In fact, the payment to Blaise Property Investments, LLC is highly suspect, especially given the fact that title work revealed no liens secured by said LLC.

49.  Freedom Mortgage, Staggs Management, and/or Kenny Gregg breached their fiduciary duty owed to the Popes as stated above by providing false information, and failing to disclose or verify material information to the Popes.  None of the above fees, commissions or payments were disclosed to the Popes prior to closing on the Properties.

50.  All of the above undisclosed fees, commissions, and payments represented disguised compensation that prevented the Popes from learning the true cost of the purchase of the Properties.

51.  The Popes suffered damages as a result of the actions and breach of the respective fiduciary duties owed the Popes by Freedom Mortgage, Staggs Management, and/or Kenny Gregg, the exact amount to be shown at trial.

**COUNT VII**
**NEGLIGENT AND/OR FRAUDULENT MISREPRESENTATION**
**(Against Kenny Gregg and Staggs Management)**

52.  Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

53.  Kenny Gregg failed to disclose that his other employer Staggs Management would

14

receive compensation in the amount of $23,000.00 in consulting fees when the Pope's loan closed and that he had a vested interest in making sure it closed no matter how much damage the Popes would incur as a result of the misrepresentations.

54.     Kenny Gregg failed to disclose that he was an owner and/or officer and/or agent of Superior Marketing Concepts, Inc., and that he or this corporation would receive compensation in the amount of $990.00 when the Pope's loan closed.

55.     Kenny Gregg at all times represented to the Popes that he was only an employee of Staggs Management and would be the Pope's exclusive agent with respect to the purchase of the Properties.

56.     Kenny Gregg acted in a negligent and/or fraudulent manner and concealed material information from the Popes to prevent the Popes from learning the true market value and condition of the Properties, and acted to negligently and/or fraudulently conceal the fact he was also an employee of Freedom Mortgage.

57.     Kenny Gregg represented to the Popes that the Properties were located in a stable area of Jackson and property values were expected to increase between 5-10% and would at the same time provide excellent cash flow.  However, Kenny Gregg knew or should have known that said Properties were in fact located in a blighted area.

58.     Kenny Gregg fraudulently and/or negligently represented that the Properties were fully rented and the tenants in the Properties were current with all rental obligations.

59.     The Popes relied to their detriment on each of the above material misrepresentations.

60.     As a direct and proximate result of such negligent and/or fraudulent

15

representations by Kenny Gregg and/or Staggs Management, the Popes suffered actual damages and losses, the exact amount to be shown at trial.

## COUNT VIII
## FRAUDULENT AND/OR NEGLIGENT CONCEALMENT
### (Against Kenny Gregg and Charles Payne)

61.     Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

62.     The relationship between the Popes, Kenny Gregg and Charles Payne rested upon the trust and confidence between the parties necessitated by the type of business in which they were engaging.  The Popes placed confidence and trust in Kenny Gregg's and Charles Payne's honesty, integrity, and ability to skillfully and professionally perform the services requested. Moreover, Kenny Gregg and Charles Payne had superior knowledge of the subject Properties, the local real estate market, and the true market value of the Properties.

63.     Kenny Gregg and Charles Payne made fraudulent and/or negligent representations and concealed material facts in the loan packages, the appraisals, and in other communications with the Popes.  Specifically, the loan applications and the appraisals omitted and/or misrepresented the true market value of the subject Properties, the location and accurate and appropriate comparable values.

64.     Kenny Gregg's and/or Charles Payne's concealment of material facts and other omissions were intended to induce the Popes to purchase the Properties.  The Pope's decision to purchase the Properties was based on their belief that the information in the loan packages and appraisals provided by Kenny Gregg and Charles Payne was accurate and that no material information had been omitted.  Had the Popes known the information and material facts that

16

were omitted from the loan packages and appraisals by Kenny Gregg and Charles Payne, they would not have purchased the Properties.

65.     As a result, the Popes suffered damages as a direct and proximate result of Kenny Gregg's and Charles Payne's acts and/or omissions, the exact amount to be shown at the trial of this cause.

**COUNT IX**
**NEGLIGENT MISREPRESENTATION**
**(Against Kenny Gregg, and Charles Payne)**

66.     Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

67.     In the course of conducting business, Kenny Gregg and Charles Payne provided incorrect information to the Popes or withheld material information relevant to the Properties. Kenny Gregg and Charles Payne did so to directly or indirectly influence the Popes into purchasing said Properties.

68.     Kenny Gregg failed to exercise reasonable care in obtaining and communicating the true market value of the subject Properties to the Popes.

69.     Kenny Gregg knew or should have known that it was foreseeable that the Popes would rely on his expertise in the mortgage industry in deciding whether to purchase the Properties.

70.     Charles Payne failed to exercise reasonable care in obtaining and communicating the true market value of the subject Properties.

71.     Charles Payne knew or should have known that it was foreseeable that the Popes would rely on his expertise in appraising the market value of the Properties.

17

72.     As a result of Kenny Gregg's and Charles Payne's negligence and failure to exercise reasonable care, false information was obtained and communicated to the Popes regarding the true market value and condition of the Properties.

73.     Kenny Gregg and Charles Payne knew that the Popes would rely on the information they supplied.  The Popes did rely on the false information.

74.     The Popes suffered damages as a direct and proximate result of their negligence, the exact amount to be shown at the trial of this cause.

**COUNT X**
**NEGLIGENCE**
**(Against Kenny Gregg, Staggs Management, Freedom Mortgage,**
**Charles Payne, and Steve Usry)**

75.     Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

76.     In the course of conducting business, Defendants Kenny Gregg, Staggs Management, Freedom Mortgage, Charles Payne and Steve Usry owed the Popes a duty to exercise reasonable care when performing their respective functions and roles in relation to the subject transaction.  Specifically, each was required to exercise the requisite degree of learning, skill, and ability of others in the same profession.

77.     Charles Payne knew or should have known the Popes would rely on his appraisals in making their decision on whether to purchase the Properties.  The Popes were foreseeable third-party beneficiaries of said appraisals, such that Charles Payne owed the Popes a duty to perform the appraisals for the subject Properties exercising the requisite degree of learning, skill, and ability typically found in the appraisal business, and to perform said appraisals in compliance with the Uniform Standards of Professional Appraisal Practice ("USPAP").

78.     Charles Payne's acts and omissions were negligent and/or grossly negligent and fell below the applicable standard of care for an individual in his respective profession, and failed to act in accordance with generally accepted appraisal standards in the following manner:

(a)     by failing to recognize the actual condition of the appraised property;

(b)     by failing to correctly select competitive rents;

(c)     by failing to correctly interpret market rents;

(d)      by failing to correctly select comparable sales and complete a credible sale comparison analysis;

(e)     by failing to accurately analyze comparable rental data as was available within the subject market area in order to properly estimate the potential earing capacity of the property;

(f)     by failing to analyze such comparable data as was available to estimate rates of capitalization, and failing to extract gross rent multipliers from the market area in which the appraised property was located. [The data actually selected was extracted from properties in market areas that were significantly and drastically different from the market area in which the appraised property was located];

(g)     by failing to base projections of future rent and/or income potential on reasonably clear and appropriate evidence. [The rental data actually selected was extracted from properties outside of the subject's market area and failed to account for the differences between potential buyers and sellers within each of those markets, thereby utilizing rental rates from

19

properties that were comparable and that resulted in a significantly

overstated rental or income conclusion for the subject property, further

resulting in an inflated value opinion];

(h)     by failing to analyze all current agreements of sale, options and listings of

the subject properties, current as of the effective date of the appraisal; and,

(i)     by failing to properly analyze all sales of the subject property that had

occurred in the three (3) years prior to the effective date of the appraisal.

79.     Charles Payne's inappropriate selection of comparables, and lack of analysis of

previous sales, resulted in an inflated value for the subject Properties.

80.     Charles Payne knew the contract sales price of the Properties before conducting

his appraisal, and relied heavily on the contract price in determining the value of the Properties.

81.     Kenny Gregg's and Charles Payne's acts and omissions fell below the applicable

standard of care for individuals within their respective professions when they provided the Popes

with false and incorrect information, and when they concealed or failed to provide material

information which was instrumental to the Pope's decision of whether to purchase the Properties.

82.     Steve Usry's acts and omissions were negligent and/or grossly negligent and fell

below the applicable standard of care for an individual in his respective profession in the

following manner:

(a)     by preparing, completing, adopting, approving, distributing, and/or signing

negligently prepared HUD-1 Settlement Statements;

(b)     by failing to follow the terms of the real estate contract by preparing a

Special Warranty Deed transferring the Property to the Popes, when the

20

real estate contract specifically called for conveyance by General Warranty

Deed;

(c)    by allowing a ten percent (10%) real estate commission to be paid at

closing when the real estate sales contracts contained no such provisions

allowing the payment of a commission;

(d)    failing to adequately protect the Popes' interest in the transaction by not

disclosing a serious conflict in interest in that he served as registered agent

for Blaise Property Investments, LLC, an entity which received Twenty-

seven Thousand and No/Dollars ($27,000.00) at closing;

(e)    failing to properly prorate rental payments, and credit the Popes for

security deposits and advance rentals on the HUD-1 Settlement

Statements;

(f)    failing to obtain and confirm rent schedules, tenant deposits and tenant

estoppel certificates;

(g)    failing to prepare landlord and tenant estoppel certificates;

(h)    failing to verify whether or not Halcyon, LLC was a properly organized

Mississippi limited liability company with the Mississippi Secretary of

State;

(i)    failing to verify whether Halcyon, LLC, was authorized to hold and

convey real property; and,

(j)    by allowing Halcyon, LLC, an improperly formed LLC with no registered

agent as required by Miss. Code Ann. § 79-11-163 to enter into a real

estate transaction and convey real property.

83.     Staggs Management, Freedom Mortgage and/or Kenny Gregg breached their duty to the Popes by hiring and relying on an appraiser, Charles Payne, who they knew or should have known would fail to appraise the Properties accurately.

84.     Staggs Management, Freedom Mortgage, Kenny Gregg and/or Charles Payne breached their professional duties and obligations to the Popes when they each failed to use the ordinary care and skill that should have been used by a licensed real estate broker/agent/lender and/or appraiser to properly and accurately market, sale, appraise and finance the Properties.

85.     Steve Usry breached his duty to the Popes as a closing attorney by failing to exercise the requisite degree of learning, skill, ability and reasonable care of others in the same profession.

86.     Plaintiffs relied on these Defendants as stated herein and suffered damages as a result of their individual and/or collective negligence and/or breach of their professional duties, the exact amount to be shown at the trial of this cause.

**COUNT XI**
**NEGLIGENT SUPERVISION**
**(Against Freedom Mortgage and Staggs Management)**

87.     Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

88.     Defendant Kenny Gregg was at all times an employee of both Freedom Mortgage and Staggs Management.

89.     Freedom Mortgage and Staggs Management each had a duty to supervise and control their employee Kenny Gregg in a reasonable manner.

90.     Freedom Mortgage and Staggs Management failed to supervise and control

22

employee Kenny Gregg in such a manner as to protect acts of negligence and/or fraud, all in
breach of their duties.

91.     As a result, the Popes suffered damages as a direct and proximate result of
Freedom Mortgage's and Staggs Management's negligent supervision and/or grossly negligent
supervision of their employee Kenny Gregg, the exact amount to be shown at the trial of this
cause.

**COUNT XII**
**CIVIL CONSPIRACY**
**(Against Kenny Gregg, Staggs Management, Freedom Mortgage, and Charles Payne)**

92.     Plaintiffs re-assert and re-allege each and every allegation contained in the
preceding paragraphs.

93.     As described above, the facts establish that Defendants Kenny Gregg, Staggs
Management, Freedom Mortgage, and Charles Payne entered into agreements and understandings
to act unlawfully or use an unlawful means to provide false information and to fail to disclose
material facts related to the fraudulently originated loans to the Popes.

94.     The subject Defendants conspired with the objective of deceiving and/or
defrauding the Popes for monetary gain.  There was a meeting of the minds among the
Defendants concerning how to achieve their goals and the role each individual needed to play in
order to effectuate the mortgage fraud scheme.

95.     Each of the subject Defendants committed at least one act in furtherance of the
conspiracy, including, but not limited to, providing false information, making misrepresentations,
and withholding and concealing material facts and information from the Popes.

96.     As a result of this conspiracy, the Popes suffered damages when they later

23

discovered the Properties they purchased were in significantly worse condition than represented, as well as worth considerably less than what they paid for the Properties.  Because of this conspiracy, the Popes own two (2) Fourplexes that are completely vacant and have been vandalized due to the vacancies causing further deterioration in value, all damages flowing from the Defendants' actions.  The exact amount of damages will be shown at trial.

## COUNT XIII
## CORPORATE VEIL PIERCING

97.     Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

98.     Staggs Management is a sham entity and is believed to be under-capitalized and operates as the alter ego of its officers, directors, and shareholders.

99.     AllSouth Appraisal, Inc., is a sham entity and is believed to be under-capitalized and operates as the alter ego of its owner Charles Payne.  Said entity was administratively dissolved on May 1, 2007.

100.     The Popes sustained damages as a direct result of the actions of Kenny Gregg, Charles Payne, and Staggs Management.

101.     The corporate forms of the entities known as Staggs Management Group, LLC, and AllSouth Appraisals, Inc., should be disregarded and each of the Defendants' officers, directors, shareholders, members, and employees should be personally and individually liable to the Popes for all claims for damages asserted in this action.

## COUNT XIV
## UNJUST ENRICHMENT
## (Against Kenny Gregg, Staggs Management, Freedom Mortgage, Charles Payne and AllSouth Appraisal, Inc.)

102.    Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

103.    The Popes conferred a benefit upon the Defendants in the form of commissions, fees, unknown charges and expenses, and increased business when they executed the HUD-1 Settlement Statements.

104.    Because the benefits conferred upon Defendants resulted from Defendants' actions in violation of federal, state, and common law, it would be unjust to allow Defendants to retain the benefit conferred upon them by the Popes, and said benefit should be returned to the Popes, the exact amount to be shown at trial.

**COUNT XV**
**IDENTIFICATION OF PARTIES IN INTEREST**
**(Against IndyMac, Specialized Loan, and Citimortgage)**

105.    Plaintiffs re-assert and re-allege each and every allegation contained in the preceding paragraphs.

106.    The above mentioned named assignees and subsequent mortgage holders of the original mortgages are named as Defendants for purposes of only providing notice and ascertaining their rights against Plaintiffs, which are alleged to be none.  Copies of Deeds of Trust and Promissory Notes are attached hereto as Exhibits "C" and "D".

WHEREFORE, PREMISES CONSIDERED, Plaintiffs petition the Court to enter a judgment in their favor and against the Defendants, individually and/or collectively, jointly and/or severally, as follows:

1.    For judgment in favor of the Popes and against the Defendants in the amount of not less than Five Hundred Thousand and No/Dollars ($500,000.00), representing the repurchase

of the Properties and reimbursement of all costs, fees, interest, and finance charges incurred as a result of the purchases, along with costs and reasonable attorneys fees incurred in prosecuting this action.

2.      For judgment in favor of the Popes and against the Defendants in the maximum amount of damages, including treble damages, as allowed under the provisions of the Real Estate Settlement Procedures Act ("RESPA").

3.      For judgment in favor of the Popes and against the Defendants in the maximum amount of damages as allowed under of Miss. Code Ann. § 73-35-31(2).

4.      For an injunction and/or declaratory judgment to enjoin all of the named Defendants from reporting any adverse and/or negative information to any credit reporting agency pending resolution of this matter.

5.      For judgment in favor of the Popes and against the Defendants in an amount that would fully compensate the Popes for all losses resulting from Defendants' conduct.

6.      For judgment in favor of the Popes and against Defendants for prejudgment interest and postjudgment interest.

7.      For judgment in favor of the Popes and against the applicable Defendants for punitive damages in an amount not less than $1,000,000.00 that would punish Defendants for the grossly negligent, willful, wanton, and reckless misconduct alleged in this Complaint and that would effectively deter Defendants and others like them from future unlawful behavior.

8.      For such other and further relief as the Court determines to be just and proper, including all costs of this action and an award of attorneys' fees and expenses.

Respectfully submitted, this the 15th day of January, 2009.

Thomas E. Pope and Christine Pope

By Their Attorneys,

/s/ Robert T. Van Uden, III
Robert T. Van Uden, III (MSB No. 100130)
Robert T. Higginbotham, Jr. (MSB No. 9369)

OF COUNSEL:

G. Michael Massey (MSB No. 9404)
J. Wilbourn Vise (MSB No. 10135)
MASSEY, HIGGINBOTHAM, VISE & PHILLIPS, P. A.
3003 Lakeland Cove, Suite E
Jackson, Mississippi 39232
Telephone:  (601) 420-2200
Facsimile:   (601) 420-2202

27