# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

**THOMAS E. POPE and CHRISTINE POPE**                                              **PLAINTIFFS**

**V.**                                                        **CIVIL ACTION NO. 3:08-cv-464-DPJ-FKB**

**FREEDOM MORTGAGE CORPORATION, INC.,**
**ET AL.**                                                                           **DEFENDANTS**

## ORDER

This matter is before the Court on motions for summary judgment filed by Defendant Freedom Mortgage Corporation, Inc., [166] and Defendant Steven D. Usry [171]. The motions have been fully briefed, and the Court has considered the parties' submissions and the applicable law. For the reasons stated below, the motions are granted in part and denied in part.

**I.      Facts and Procedural History**

Plaintiffs Thomas E. and Christine Pope are California residents. In February 2006, the Popes enrolled in a real estate investment program offered by Prosper Learning, which referred them to the services of Defendant Kenny Gregg ("Gregg") and his employer Defendant Staggs Management Group, LLC ("Staggs"), at other times known as Staggs Mortgage and Staggs Financial. At some time in August 2006, Gregg and supervisor Trent Staggs went to work for mortgage lender Defendant Freedom Mortgage Corporation, Inc. ("Freedom"). Around the same time, Gregg presented the Popes with an opportunity to purchase residential properties at 3151 and 3155 Booker Street, Jackson, Mississippi from Halcyon, LLC ("Halcyon"). On August 15 or 18, 2006, the Popes executed a contract to purchase the Booker properties. In late August or early September, Gregg's wife Kelley Gregg of Superior Marketing Concepts, Inc., ("Superior") hired Charles F. Payne of Allsouth Appraisal, Inc., who appraised each of the two properties at

$115,000. A property inspection and necessary repairs were also arranged through Kelley Gregg and Superior. The Popes closed the transaction on October 5 or 6, 2006, using four loans from Freedom to purchase the Booker properties at $115,000 each for a total of $230,000. The closing attorney was Defendant Steven D. Usry.

After closing, the Popes ran into several problems with the Booker properties, including difficulties collecting tenants' rent payments, repair issues, and code violations that resulted in the city of Jackson closing the properties. In addition to Defendants Gregg, Staggs, Freedom, and Usry, the Popes sued Allsouth Appraisal, Inc., appraiser Charles F. Payne, and several mortgage holders to whom Freedom sold the Popes' mortgages. The Complaint variously asserts certain federal and state statutory claims as well as state law claims in the nature of breach of contract, breach of fiduciary duty, negligent and/or fraudulent misrepresentation, negligence, civil conspiracy, and others. The Federal Deposit Insurance Corporation, as Receiver for then-Defendant IndyMac Bank, F.S.B., properly removed the case from the Circuit Court of Hinds County, Mississippi, to this Court pursuant to 12 U.S.C. § 1819(b)(2)(A) and 28 U.S.C. § 1441(b).[1]

The claims against Allsouth Appraisal, Charles F. Payne, and the subsequent mortgage holders have been resolved. Claims against Defendants Kenny Gregg, Staggs Management, Freedom Mortgage, and Steven Usry remain. Freedom and Usry have now moved for summary

---

[1]IndyMac is no longer a party, and the federal claims are due to be dismissed. Nevertheless, the Fifth Circuit recognizes "continued federal jurisdiction when the FDIC removes a case but is later dismissed, and that this jurisdiction is pursuant to 12 U.S.C. § 1819 and not any other statute." *Adair v. Lease Partners, Inc.*, 587 F.3d 238, 244 (5th Cir. 2009). There are mixed opinions on this issue. *Id.* at 246 (Jolly, J., concurring). Accordingly, the Court notes that it would retain supplemental jurisdiction over the state law claims due to the length of the proceedings. 28 U.S.C. § 1367.

judgment. Their motions [166, 171] have been fully briefed and the Court is prepared to rule as set forth below.

**II.    Standard**

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id*. at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make

3

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

**III.   Analysis**

   A.   Freedom Mortgage's Motion for Summary Judgment

      1.   Statutory Claims

Freedom Mortgage asserts that the Popes' claims for alleged violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601 *et seq.*, and the Mississippi Mortgage Consumer Protection Law, Miss. Code Ann. § 81-18-27, fail as a matter of law for various reasons. The Popes' Response fails to address these arguments, and, as a result, these statutory claims have been abandoned.

      2.   Common Law Claims

The Popes' Amended Complaint [56] alleges breach of fiduciary duty, negligence, negligent supervision, and civil conspiracy claims against Freedom Mortgage. The bulk of the Pope's charges against Freedom relate to the acts of Defendant Kenny Gregg, which raises the threshold issue of whether Freedom can be vicariously responsible for Gregg.

         a.   Vicarious Liability

Under Mississippi law, an employer may be liable under the doctrine of respondeat superior for an employees' acts "within the scope of employment." *Adams v. Cinemark USA, Inc.*, 831 So. 2d 1156, 1159 (Miss. 2002). Freedom first argues that Gregg's alleged conduct occurred before he was employed by Freedom. It is undisputed that, on August 8, 2006, Kenny Gregg presented the opportunity to purchase the Booker properties to the Popes, offering the

4

Popes a right of first refusal. Popes' Resp. [178] at 12; Ex. G to Resp. [178]. Freedom contends that Gregg began employment on August 14, and while there is some evidence to support that theory, Gregg himself testified that he began working for Freedom on August 3. Gregg Dep. at 31-32, 48-49, 94. Accordingly, there is a question of fact whether Gregg began employment before or after many of the disputed acts.

Freedom next argues that even if Gregg began employment before the discussions of the Booker properties, Freedom still faces no liability because Gregg acted beyond the course and scope of his job duties. This too presents a genuine question of material fact. In *Gulledge v. Shaw*, the Mississippi Supreme Court reiterated that, when determining course and scope,

> [t]he inquiry is not whether the act in question, in any case, was done, so far as time is concerned, while the servant was engaged in the master's business, nor as to mode or manner of doing it . . . *but whether, from the nature of the act itself as actually done, it was an act done in the master's business, or wholly disconnected therefrom by the servant, not as servant, but as an individual on his own account.*

880 So. 2d 288, 295 (Miss. 2004) (quoting *Holliday v. Pizza Inn, Inc.*, 659 So. 2d 860, 864 (Miss. 1995)). Furthermore,

> [i]n determining whether a particular act is committed by a servant within the scope of his employment, the decisive question is not whether the servant was acting in accordance with the instructions of the master, but, was he at the time doing any act in furtherance of his masters' business?

*Holliday*, 659 So. 2d at 864 (citing *Barmore v. Vicksburg, S. & P. Ry. Co.*, 38 So. 210, 212 (Miss. 1905)), *cited in Commercial Bank v. Hearn*, 923 So. 2d 202, 207 (Miss. 2006).

Freedom asserts that the scope of Gregg's employment was defined by the provision in his employment agreement that he was hired "for the purpose of originating, and supervising the origination of, qualifying residential mortgage loans." Branch Manager Employment Agreement ¶ 1(a). Freedom also offers Gregg's testimony that, as loan originator,

5

> [M]y job is to take the application, take the credit report, get them . . . ready to move forward with the loan. So I had to lock the loan, find the bank for it, find a home for it pretty much. Once I found a home, I would then go in and register it . . . . [After the loan was registered,] I would then turn it over to Kelley [Gregg]. She would collect all the documents. That was her job.

Gregg Dep. at 78. However, this response came when Gregg was asked to describe "the difference between a loan originator and a loan processer [sic]." *Id.* Gregg specifically testified that it was his job to "communicate with my clients in any way possible to help them get through the transaction in order to complete a loan," including answering the Popes' questions about inspection reports and repairs, and that in his dealings with the Popes on behalf of Freedom he never did anything inconsistent with or in violation of his employment agreement. Gregg Dep. at 35-36, 225-26, 230-31, 238-39.[2] Having found a jury question on the issue of vicarious liability, the next order of business is to determine whether Plaintiffs' various claims against Freedom survive summary judgment.

### i. *Breach of Fiduciary Duty*

Count VI of the Amended Complaint alleges breach of fiduciary duty. "The determination of what constitutes a confidential or fiduciary relationship is a question of fact." *Lowery v. Guaranty Bank & Trust Co.*, 592 So. 2d 79, 84-85 (Miss. 1991). In *Robley v. Blue*

---

[2]The agreement would also support a broader definition of Gregg's duties. The same subparagraph cited by Freedom includes among services to be provided "those duties and responsibilities . . . as may be assigned by Employer, together with such other duties as are generally commensurate with the title of such office." Branch Manager Employment Agreement ¶ 1(a). Gregg's responsibilities also included "all duties incident to the successful management and operation of the Branch Office and such other duties as specified by Employer from time to time." *Id.* ¶ 1(c). Finally, according to the agreement, "Subject to Employer's supervision and control, Employee shall have and exercise that authority typically exercised by branch office managers in the industry and as delegated to him by the policies, procedures and guidelines promulgated by Employer in writing or by this Agreement." *Id.* ¶ 5. Neither side has offered an interpretation or proof regarding these more expansive provisions.

*Cross/Blue Shield of Mississippi*, the Mississippi Supreme Court provided a general overview of the issue:

> A fiduciary relationship is a broad term embracing technical fiduciary relations and informal relations which exist wherever one person trusts in or relies upon another. Traditional fiduciary relationships are found in cases of trustee and beneficiary, partners, principal and agents, guardian and ward, managing directors and corporation. However, our law applies a broad brush to this doctrine and does not preclude a jury's finding of a fiduciary relationship in other situations.

935 So. 2d 990, 994 (Miss. 2006) (citations omitted). Where a fiduciary duty is alleged between parties to a contract, Mississippi has noted that

> [o]rdinarily this Court does not impose fiduciary duties upon parties to a contractual agreement, but in some rare cases the terms of the contract itself create a fiduciary relationship. However, this is only in cases where the contract relationship creates a justifiable special trust and confidence in the parties so that the first party relaxes the care and vigilance normally exercised in entering into a transaction with a stranger.
> Although every contractual agreement does not give rise to a fiduciary relationship, in Mississippi such a relationship may exist under the following circumstances:
>> (1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

*Id*. at 994-95 (citations omitted).

Freedom is correct that, in a normal contractual relationship, the Popes would be required to make a showing as to the four conditions enumerated in *Robley* and other similar cases. *See, e.g.*, *Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So. 2d 812, 816-17 (Miss. 1996) (holding that, in contractual setting, the four conditions must be shown). However, the Popes make no effort to do so, arguing instead that the fiduciary relationship arose not from Freedom's contract to lend money, but from Gregg's acts that placed Freedom in a fiduciary relationship.

7

Popes' Resp. [178] at 22. The Popes contend that their relationship with Gregg "was much more than the typical lender/borrower relationship." *Id*.

In *Lowery*, the Mississippi Supreme Court found a question of fact as to the existence of a fiduciary relationship between lender and borrower where there existed a history of dealing with a bank officer "aside from the note." 592 So. 2d at 85; *see also Allstate Life Ins. Co. v. Parnell*, 292 F. App'x 264, 270 (5th Cir. 2008) ("When there is a history of dealings between parties that creates a special relationship of trust and reliance, Mississippi courts sometimes find the existence of a fiduciary duty.").

In the present case, the history of the relationship is not nearly as significant as that reflected in *Lowery*. However, like *Lowery*, the conduct purportedly giving rise to the fiduciary relationship occurred outside the note. Many of the Popes' complaints have to do with Gregg's conduct regarding the investment rather than the act of lending funds. According to the Popes, Gregg "offered them the properties, negotiated the contracts, arranged inspections, set up financing and did all the paperwork to close the loan." *Id*. There is ample evidentiary support for these contentions.[3] The Popes suggest that this conduct created at least a quasi-fiduciary

---

[3]*See* Gregg Dep. at 35-36, 225-26, 230-31, 238-39; *see also* Ex. G to Resp. [178]. Exhibit G to the Popes' response is a collection of emails that are particularly relevant and suggest that Gregg (1) presented the subject property to the Popes [Bates 00004]; (2) "crunch[ed] the numbers" on the investment [*id*.]; (3) gave the Popes financial advice related to the pricing of the property [00009, 00018]; (4) told them they would deal with him "directly throughout the entire transaction and all future transactions as well" to cut out the "middle person[s]"; (5) arranged for management to be "in place to take over this property upon closing" [*id*.]; (6) arranged for inspections [00060], appraisals [00063], the closing attorney [00066], and financing [00080]; and (7) unilaterally renegotiated the price with the seller when the appraisal was lower than the Popes expected [00086].

relationship. *Lowery*, 592 So. 2d at 84. Although a close question, the Court concludes that a jury question exists on this point based on the current record.

The inquiry does not stop there, however. The Popes must still demonstrate that there existed a "relationship wherein one person is in a position to exercise a dominant influence upon another, arising either from weakness of mind or body, *or through trust.*" *Roman Catholic Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1239 (Miss. 2005) (citations omitted) (emphasis added); *Lowery*, 592 So. 2d at 83; *Varnado v. Alfonso Realty, Inc.*, 16 So. 3d 746, 749-50 (Miss. Ct. App. 2009) (applying fiduciary standard of care to real estate agents).

Here, the Popes contend that the fiduciary relationship arose not because they were feeble in mind or body but because they placed their "complete trust and confidence in both Kenny Gregg and Trent Staggs of Freedom Mortgage." Popes' Resp. [178] at 22. They support this factual contention with competent record evidence. Nevertheless, mere trust in an arm's-length transaction is normally insufficient. *Robley*, 935 So.2d at 995-96 ("Although one does not typically enter into a contract with another person unless he or she has a degree of trust or confidence in that person, without more, such a transaction amounts to merely a business relationship and not a fiduciary relationship."). The difference here is that the Popes base their claimed trust not on the contract to lend money, but on Gregg's activities in finding the property and shepherding the entire deal through fruition. Exhibit G to the Pope's Response also supports their contention that Gregg encouraged that trust.[4]

---

[4] Though not explicitly addressed by the parties, Gregg's activities resembled those of a real estate broker, which would carry a heightened duty. *See Wheat v. Lindsley*, 906 So. 2d 782, 786 (Miss. Ct. App. 2004) (affirming finding of fiduciary relationship where plaintiff asserted that defendant "was functioning as her agent to find various properties that could be acquired by [plaintiff] and subsequently sold after necessary repair, renovation, and/or new construction").

9

Ultimately, this is not the typical case where someone alleges a fiduciary relationship with a lender based on the act of offering the loan. *See, e.g.*, *Hopewell Enters., Inc.*, 680 So. 2d at 816-17. Gregg wore many hats for the Popes, several of which were related to securing the investment property rather than the loan. As stated above, there is a genuine factual dispute as to whether Freedom is vicariously liable for Gregg's conduct. Likewise, questions of fact exist as to whether the Popes justifiably relied on Gregg and whether his acts created a fiduciary relationship. Finally, assuming a fiduciary relationship, there is a question of fact as to whether any fiduciary duties were reached. Accordingly, the fiduciary duty claim survives summary judgment .

ii. *Negligence Regarding Appraisal*

Count X of the Amended Complaint charges Freedom and other defendants with various acts of negligence. The only specific act of negligence attributed to Freedom in this count is that it negligently hired and relied upon the appraisal of Charles Payne. As stated, Freedom can be held vicariously responsible for Gregg's actions in this regard. However, Freedom argues that it is entitled to summary judgment on this claim because: (1) independent contractor Superior, not Freedom, selected Payne as appraiser; (2) there is no evidence of negligence in this choice, i.e., no one knew or should have known Payne would appraise the property incorrectly; and (3) the Popes could not have reasonably relied on the appraisals.

The Popes present evidence that they claim will establish Freedom's involvement in hiring Payne and the unreliability of his work. Although the Court fails to see how the proffered evidence supports the argument, the claim fails for another reason. The Popes never addressed Freedom's argument that they could not have reasonably relied on the appraisals based on advice

10

from Prosper's real estate investment program, inspection reports showing necessary repairs, and disclosures the Popes signed.[5]  Accordingly, even if a breach occurred, the Pope's have failed to direct the Court to any record evidence on causation and damages.  Finding no genuine issue of fact for trial on the issue, summary judgment is granted.

### iii. Civil Conspiracy

Count XII of the Amended Complaint asserts a claim of civil conspiracy.  Conspiracy claims require an agreement for the purpose of accomplishing an underlying civil wrong.  *See Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004) (listing elements of civil conspiracy).  Freedom argues that the Popes failed to state a claim of civil conspiracy both because there is no viable underlying wrong and because Plaintiffs offered nothing more than circumstantial proof of agreement.  The Court has already found issues of fact for trial on the question of an underlying tort.  Moreover, Mississippi law "permits great latitude in the admission of circumstantial evidence tending to establish a conspiracy."  *Wagley v. Colonial Baking Co.*, 45 So. 2d 717, 725 (Miss. 1950); *see also Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 980-81 (Miss. 2004) (noting "agreement can be proven by indirect and circumstantial evidence since there is rarely direct evidence of an agreement to conspire," in context of alleged civil rights conspiracy).

The proof offered by the Popes indicates complicated relationships between the parties involved in the Popes' real estate purchase, including contractual and professional relationships

---

[5]The Application Disclosure stated that "the purpose of the appraisal is for Freedom Mortgage Corporation's use in making an underwriting decision.  Freedom Mortgage Corporation does not warrant the value or condition of the property.  You should satisfy yourself that the price and condition of the property are acceptable."  Ex. E to Ex. 1 to Freedom's Mot. [166].

among Staggs, Superior, Halcyon, Usry, Gregg, and Freedom. Although the record is sufficient to survive summary judgment, there is more evidence related to Gregg than is related to Freedom apart from Gregg. The Court also notes that the conspiracy claim will proceed as to the other defendants, and prudence suggests that the claim should likewise proceed against Freedom. However, directed verdict remains an option if Plaintiffs fail to present sufficient proof at trial.

b. Direct Claims against Freedom

i. *Negligent Supervision*[6]

Count XI of the Amended Complaint avers that Freedom "failed to supervise and control employee Kenny Gregg in such a manner as to protect acts of negligence and/or fraud, all in breach of their duties." Amended Complaint ¶ 90. "In order to make out a claim of negligent supervision, the Plaintiff must establish the normal elements of a negligence claim: duty, breach, proximate cause and damages." *Minor v. City of Senatobia*, No. 2:05CV252-D-A, 2007 WL 1071395, at *3 (N.D. Miss. Apr. 3, 2007) (citing *Miller v. Union Planters Bank, N.A.*, No. 2:05CV2144, 2006 WL 3391095, at *6 (S.D. Miss. Nov. 22, 2006)).

Plaintiffs allege that Freedom was on notice that Gregg would continue to work for Staggs while working for Freedom, which they contend raised conflicts of interest. The Popes support the assertion with Gregg's employment application, wherein he responded that he was not leaving his previous employer but was instead "Switching Branches." Ex. Q to Popes' Resp. [178]. The Popes proffer other evidence that Freedom offered no training and circumstantial evidence that no monitoring or supervision occurred. It is important to note that the Popes must

---

[6] The parties also address negligent hiring and retention in their memoranda, but the Court sees no such claim in the Amended Complaint [56].

produce more than a mere scintilla of evidence to survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, they must present sufficient evidence upon which a jury could reasonably find in the non-movant's favor. *Id*. Once accomplished, the Court may not weigh the evidence. *Id*. at 249. In the present case, the Popes survive this burden as to the negligent supervision claim.

### ii. *Unjust Enrichment*

The Complaint also asserts an unjust enrichment cause of action. The Popes failed to respond to the portion of Freedom's motion addressing unjust enrichment, so that claim has been abandoned.

### B. Steven D. Usry's Motion for Summary Judgment

#### 1. Statutory Claim

Like Freedom, Usry argues that the Popes failed to state a claim against him for violation of RESPA. Again, the Popes failed to respond to this argument, and the claim has been abandoned.

#### 2. Common Law Claims

In their Complaint the Popes allege Usry was negligent or grossly negligent and fell below the professional standard of care in performing his duties as an attorney closing their contract. The Popes make numerous allegations of negligent conduct by Usry based on his failure to disclose certain conflicts of interest and for more than a dozen problems with the closing documents. For the purposes of his motion, Usry generally concedes a question of fact as to the allegations regarding his conduct and states that existence of an attorney-client relationship *vel non* is not material. Usry Mem. [172] at 4-5, 10-11. Instead, Usry confines his

13

summary judgment argument on the negligence claim to the issues of causation and damages. *Id.* at 4.

        a.      Failure to Disclose

It is undisputed that, on August 3, 2006, Usry drafted a joint venture agreement between Blaise Property Investment, LLC, ("Blaise") and seller Halcyon regarding the marketing of the Booker properties; that Usry was Blaise's registered agent for service of process at time of closing; and that Usry had in his possession at closing a Property Consulting and Service Agreement by which seller Halcyon agreed to pay Staggs Management $23,000 at closing, which Trent Staggs admits was not really a consulting fee but rather a real estate commission. Popes' Resp. [180] at 21; Staggs Answer ¶ 40. It is also undisputed that, beyond the payments to Blaise and Staggs listed on the HUD-1s, Usry did not disclose his and the other parties' relationships to the Popes.

Usry contends he did not breach any duty to advise the Popes of payments made by the seller to third parties Blaise and Stagg because those payments were disclosed in the HUD-1s signed by the Popes. *Id.* at 12. Usry denies a conflict of interest related to his role in this transaction with the Popes and his prior professional relationships with Blaise, Staggs, and seller Halcyon. Finally, Usry contends that, even if a conflict existed, it caused no damages because he performed his duties as a closing attorney. *Id.* at 14.

The Popes have created a question of fact on the issue of breach. While payments did appear on the HUD1s, there exists a question of fact as to whether the true nature of these payments was concealed. Moreover, Usry's relationship to the other entities with respect to this

14

very property was not disclosed. The Popes have offered expert testimony stating that this represents a breach of duty. Popes' Resp. [180] at 20-27; Boackle Aff. ¶ 5.

As for causation, Usry argues this alleged breach could not have damaged the Popes because they were already under contract to purchase the Booker Street properties before he became involved. However, the Popes state that they would not have closed on the properties had they known of these relationships, and a question of fact exists as to whether the purchase damaged the Popes. The Popes have shown a genuine issue of fact on causation and damages. *See Upchurch ex rel. Upchurch v. Rotenberry*, 761 So. 2d 199, 206 (Miss. 2000) ("Generally, proximate causation is a matter reserved for the jury.").

### b. Alleged Errors

Among the numerous errors committed by Usry, the Popes offer evidence that he failed to properly prorate taxes on the Booker Street properties, causing the Popes to pay taxes owed by the seller; failed to obtain and confirm the leases for the Booker Street properties and prorate the rental payments and credit the Popes for security deposits as required by contract; failed to obtain estoppel certificates from tenants; had the seller execute special warranty deeds rather than general warranty deeds as required by contract; used the same legal description for both properties in the deeds of trust, causing the properties to be cross-collateralized and affecting the marketability of title; and failed to prepare an attorney's certificate of title or commitment for title insurance as required by contract, preventing the Popes from making a title claim and causing delay and expense. Popes' Resp. [180] at 9, 11, 27-30.

The Popes' expert opines that Usry's mistakes constitute a breach of his duties to the Popes. Boackle Aff. ¶¶ 3-4. Usry contends, however, that these acts did not cause damage

15

(although he concedes that the Popes incurred some time and expense correcting the tax payment and cross-collateralization issues). While not all of the specifically alleged acts may have caused damage, the Popes have demonstrated at least some consequential damages caused by Usry's alleged missteps. The Popes have therefore met their burden of showing a genuine issue of material fact as to causation and damages.

Finally, the Popes include Usry in their negligence claim related to appraisal. On this point, Usry convincingly argues that he had no involvement with Payne's allegedly incorrect appraisal and no duty to verify the accuracy of an appraisal. *Id.* at 11. Plaintiffs did not respond to this point, so Usry is entitled to judgment that he is not liable for the appraisal.

### 3. Punitive Damages

Defendant Usry alternatively seeks summary judgment as to Plaintiffs' claim for punitive damages. "Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a). The Court is mindful of the Plaintiffs' heavy burden in this regard. While Plaintiffs may not ultimately satisfy this burden, the Court will decide whether punitive damages should be presented to the jury following a bifurcated proceeding on the issue of compensatory damages. *See* Miss. Code Ann. § 11-1-65(1)(b)-(c).

### 4. Measure of Damages

Usry has also asked the Court to rule on the appropriate measure of damages. While some of Usry's arguments on this point appear to be correct, it also appears that consequential

damages may exist. In any event, the Court concludes that a more specific ruling on damages would be appropriate at the close of evidence during the preparation of jury instructions.

The Court has considered all arguments raised by the parties, but concludes that those not expressly addressed herein would not change the outcome of this order.

**IV.     Conclusion**

As stated above, the motions for summary judgment of Defendants Freedom Mortgage [166] and Steven D. Usry [171] are granted in part and denied in part. The parties are directed to contact the undersigned's courtroom deputy within 14 days to obtain pretrial and trial settings.

**SO ORDERED AND ADJUDGED** this the 14th day of May, 2010.

>           s/ *Daniel P. Jordan III*
>           UNITED STATES DISTRICT JUDGE